UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN ANDERSON,<br><br>     Plaintiff,<br><br>v.<br><br>K.T. SANBORN, et al.,<br><br>     Defendants. | No. 2:21-cv-00561-KJM-EFB (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought pursuant to 42 U.S.C. § 1983. Defendant moves for summary judgment. ECF No. 24. For the reasons that follow, the motion must be granted as to plaintiff's claims against defendants in their official capacities and otherwise denied.

**I.     The Complaint**

The action proceeds on plaintiff's amended complaint. ECF No. 10. That complaint alleges that plaintiff had knowledge of specific acts of misconduct by the defendants and that he was interviewed by Internal Affairs investigators about possible corruption and was later subjected to retaliation. Although that amended complaint contains some ambiguity as to what, if anything, plaintiff told the investigators, it alleges in relevant part that he had information and direct knowledge that certain staff members at the California Health Care Facility ("CHCF") had engaged in misconduct which would subject them to disciplinary charges under department

1

regulations. Plaintiff claims in the complaint that he was interviewed by Special Agents of the Office of Internal Affairs, California Department of Corrections and Rehabilitation at Pelican Bay State Prison (PBSP). In the course of the interview, he was allegedly asked about corruption at CHCF, and specifically about various incidents of misconduct involving defendants Sanborn and Reyes and other staff members. Plaintiff claims that thereafter he was subjected to false rules violation ("RVR") allegations for conspiracy to introduce controlled substances into CHCF and to an adverse transfer. He alleges that the defendants provided falsified reports and information which was instrumental in removing him from CHCF in retaliation for the exercise of his First Amendment right to communicate with CDCR authorities about staff misconduct at CHCF. *Id.* at 2-3.

In its screening order of October 18, 2021, the court stated: "[P]laintiff alleges that in retaliation for communicating with the California Department of Corrections and Rehabilitation's Office of Internal Affairs about the misconduct of defendants Sanborn and Reyes, Sanborn and Reyes falsified documents and issued a falsified rules violation report against plaintiff. Liberally construed, plaintiff has stated a potentially cognizable First Amendment retaliation claim against defendants Sanborn and Reyes." ECF No. 11 at 1.

**II.    Undisputed Facts**

The following facts (derived from defendants' statement of undisputed facts (ECF No. 24-2), the declarations and deposition excerpts cited therein, plaintiff's response thereto (ECF No. 25 at 35-36), and the transcript of plaintiff's deposition (courtesy copy lodged by defendants on February 15, 2023) are not disputed:

Plaintiff was housed at CHCF from 2015 through November 30, 2017. Plaintiff was housed in administrative segregation and Deuel Vocational Institution in Tracy (DVI) from November 30, 2017 until January 11, 2018, when he returned to CHCF. Plaintiff remained at CHCF from January 11, 2018 to February 22, 2019. He was then moved to California State Prison, Sacramento until June 6, 2019 and then to PBSP.

In late 2017, defendant Sanborn worked for the Investigative Services Unit (ISU) at CHCF. In November 2017, Sanborn learned of a possible conspiracy to introduce controlled

substances into the institution and began an investigation. On February 14, 2019, Sanborn authored a confidential memorandum about the investigation, and, on March 8, 2019, he issued an incident report. The same day, he issued a Rules Violation Report (RVR) to plaintiff for conspiracy to distribute a controlled substance.

At that time, defendant Reyes was a Correctional Sergeant in the ISU. He learned from Sanborn that plaintiff had been involved in a conspiracy to introduce controlled substances into CHCF. On March 8, 2019, he, too, authored an incident report about the investigation, summarizing Sanborn's findings and conclusions. To the best of his recollection, Reyes did not speak with plaintiff about the conspiracy and did not participate in investigating plaintiff.

Plaintiff was found guilty of the disciplinary charge issued by Sanborn at a hearing at PBSP on June 28, 2019. After plaintiff's grievance challenging the hearing was granted, the matter was reheard on November 20, 2019, and plaintiff was found not guilty.

### III. Disputed Facts

Defendant Sanborn asserts that his investigation indicated that plaintiff, former inmate Sean Couch, and their relatives and associates conspired with a CHCF employee named Brooks to introduce multiple controlled substances into CHCF for distribution. Plaintiff disputes this claim. He notes that he was not incarcerated in CHCF on November 30, 2017, but was instead incarcerated at DVI. Presumably, plaintiff provides this fact to undermine Sanborn's claim that he became aware of a possible conspiracy at CHCF involving plaintiff in November 2017. However, plaintiff testified at his deposition that he was incarcerated at CHCF until transferred to DVI on November 30, 2017. Anderson Dep., lodged by defs. on Feb. 15, 2023, at 19:11-20:6.

Plaintiff notes that Sanborn allegedly relied on confidential information during the investigation but has refused to provide that information to plaintiff in discovery. *See* ECF No. 25 at 25-37 (defendant Sanborn's responses to plaintiff's requests for production of documents, declining to provide "confidential" information). Plaintiff argues that defendants' "alleged drug conspiracy case rest[s] solely on an investigation through confidential sources alone," which is not reliable.

////

Of particular significance to the instant motion, plaintiff disputes defendants' characterization of his claim as alleging that they retaliated against him "for communicating with the Office of Internal Affairs." According to plaintiff, his complaint alleges that defendants retaliated against him because he held information about staff misconduct, not because he spoke to Internal Affairs. In his opposition brief, plaintiff states that he had worked with Brooks during charity food sales drives at CHCF. ECF No. 24 at 5. Plaintiff and Brooks became aware "that certain funds raised were not properly distributed to said charities." *Id.* The opposition brief does not indicate whether he spoke up about the diversion of funds prior to defendants' issuance of their reports and Sanborn's issuance of the RVR. However, in his discovery responses to defendants, plaintiff wrote that "SANBORN was present during the November 28, 2017 questioning of Plaintiff concerning embezzlement of food sales funds involving the then Warden Michael Martell." ECF No. 25 at 10.

In his deposition testimony, plaintiff clarified to defense counsel that he did not intend to allege that the retaliatory conduct was done because of his interview with Internal Affairs, which occurred after the retaliation. Pl.'s Dep. at 37:13-23. Instead, plaintiff believes that the retaliation began after he spoke up to Brooks and unidentified other staff about money he believed to be missing and possibly embezzled from the food sales funds. *Id.* at 42:9-16. Plaintiff believes he made these statements between December 1 and December 10, 2018. *Id.* at 43:15-24.

According to plaintiff, he was returned to administrative segregation on January 14, 2019. *Id.* at 59:2-3. On January 17, 2019, ISU members, including defendant Reyes, questioned plaintiff about the embezzlement of food sales funds. *Id.* at 59:3-6, 46:5-9, 26:14-17. Plaintiff testified that, on February 10, 2019, Martell was "walked off for embezzling money." *Id.* at 27:9-10.

IV.     **The Motion for Summary Judgment**

    A.     **Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary

4

judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

5

depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 24-6; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.     Analysis**

To state a claim for retaliation in violation of the First Amendment, a prisoner must allege facts showing five elements: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The plaintiff need not allege that his speech was actually inhibited or suppressed, but merely that the defendant's conduct was such as would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

7

Defendants argue that the undisputed facts show that their conduct advanced the legitimate purpose of curbing the introduction of contraband into the institution. The evidence before the court on this issue is, however, in dispute. According to plaintiff, he was never involved in any conspiracy to introduce contraband, and defendant Sanborn used confidential information concerning another inmate (Couch) to accuse plaintiff of the infraction. ECF No. 25; Pl.'s Dep. at 32:23-34:2, 36:5-9. Defendants have not provided the confidential memorandums underpinning the rules violation report to the court. Falsely accusing an inmate of conspiring to introduce contraband into prison does not further any interest in curbing the introduction of contraband, and the facts are disputed as to whether defendants' accusation of plaintiff was false or legitimate. Whether Sanborn used false information to accuse plaintiff of the charges is obviously a material factual dispute. Accordingly, the court must reject this argument as grounds for summary judgment.

Defendants argue that, because plaintiff spoke to Internal Affairs, he cannot show that his speech was chilled. However, plaintiff is not required to show that his speech was actually chilled, but merely that the retaliatory conduct would chill the speech of a person of ordinary firmness. Defendants have not proffered evidence, argument, or authority showing that the issuance of a false RVR would not have such a chilling effect.

Defendants also argue that plaintiff cannot show that they took adverse action against him because of his protected conduct because their adverse action (their reports and the issuance of the RVR in February and March 2019) predated plaintiff's protected conduct (his interview with the Office of Internal Affairs at PBSP following his transfer there in June 2019). Plaintiff argues that the protected conduct that underpins his retaliation claim was not his later interview with Internal Affairs, but rather his statements to various prison staff and to ISU members in December 2018 and January 2019 regarding the theft of funds from the charity food sales.

This issue is complicated by the lack of clarity in plaintiff's pleading of the claim, which did not state any facts about the theft of food sales funds or plaintiff's statements to staff and/or ISU regarding that theft. Instead, plaintiff alleged that he had knowledge about staff "misconduct" and that he had, "most recently," spoken about that misconduct to Internal Affairs.

This lack of clarity caused the court to write, in screening the complaint, that the protected conduct alleged by plaintiff was his conversation with Internal Affairs and to frame his retaliation claim accordingly.[1] However, the complaint is capable of the construction proffered by plaintiff now, and the court notes that defendants have been aware of plaintiff's allegations that they retaliated against him for speaking up about embezzlement of food sales funds at least since

---

[1] The verbatim allegations of the complaint are:

> In former Title 15, § 3084, subd. (g) Staff misconduct means staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard, now codified in newly adopted California Code of Regulations, Title 15, § 3490, subd. (b)(14), to wit, Staff misconduct means an allegation that departmental staff violated a law, regulation, policy, or procedure, or acted contrary to an ethical or professional standard, which, if true, would more likely than not subject a staff member to adverse disciplinary action.
>
> Under this regulation Plaintiff holds a First Amendment right when required to communicate such staff misconduct to the proper authorities. Plaintiff held such information and knowledge that certain staff members at CHCF were subjected to disciplinary charges as defined above. Including Defendant SANBORN, who was a former member of CHCF's Investigative Services Unit (ISU). Most recently, this Plaintiff was interviewed by Special Agents of the Office of Internal Affairs, California Department of Corrections and Rehabilitation at Pelican Bay State Prison (PBSP).
>
> During the interview by Special Agents, Plaintiff was asked as a party in their investigation into corruption at CHCF, which included Defendants SANBORN and REYES and other staff members that violated regulations or laws. The interview was regarding various incidents that happened prior to Plaintiff's adverse transfer, false RVR allegations for conspiracy to introduce controlled substances into CHCF. The information provided to Internal Affairs was not incidental information, but direct knowledge. That was purpose [sic] to remove Plaintiff by any means necessary from CHCF.
>
> The conduct herein was a result of punishment by defendants for his knowledge of misconduct by certain defendants at CHCR. The losses of stable and secure prison employment, personal items and property which was disallowed as receiving prisons [sic] due to the adverse transfer, not to speak of the psychological trauma as exacted through arbitrary and unlawful means by defendants and each of them. All acts prior to being found guilty of any of the allegations.
>
> ***
>
> Plaintiff herein alleges that defendants either supplied or knew and relied upon falsified reports and information which was instrumental in removing Plaintiff from CHCF for the exercise of his First Amendment right to communicate with CDCR authorities about staff misconduct at CHCF.

*Id.* at 2-3.

plaintiff's deposition on May 11, 2022, well before the expiration of discovery and the dispositive motion deadline. Plaintiff, as an unrepresented inmate, is entitled to liberality in the construction of his pleadings. On the other hand, defendants, who are represented by the state's Attorney General's office, made a strategic choice to ignore plaintiff's clarification of his claims during his deposition in order to argue that the timing of plaintiff's protected conduct defeated his retaliation claim.

The evidence before the court, however, shows a material dispute between the parties regarding whether defendants issued a false RVR to plaintiff because he spoke up about misconduct by prison staff. Accordingly, the court should not accept defendants' timeline argument, which is based on a reading of the complaint that is unfairly limited, particularly in light of plaintiff's deposition testimony. Should defendants believe they have been prejudiced by the court's more liberal construction of the complaint compared to the screening order, they may seek modification of the discovery and dispositive motions schedule to obtain further opportunity to develop their response to the complaint.

Defendants also argue that they should be afforded qualified immunity. To determine whether to do so at the summary judgment stage, the court must consider whether the undisputed facts show that a constitutional violation occurred, and whether the constitutional right at issue was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the undisputed facts show no constitutional violation, or if the right was not clearly established, the court should grant the official qualified immunity. *Id.* In determining whether the right was clearly established, the court must ask (1) whether the law governing the official's conduct was clearly established and (2) whether a reasonable official, in the same position faced by the defendants, would understand that his conduct violated the law. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Defendants' request for qualified immunity rests on their arguments that the undisputed facts show that the RVR was legitimate and that no constitutional violation occurred because plaintiff's protected speech occurred after the RVR issued. Because the court has found material disputes on both issues, qualified immunity must be denied at this time.

Defendants argue that plaintiff's claim for punitive damages should be summarily adjudicated in their favor, because plaintiff has not shown that defendants acted with evil motive or intent or reckless and callous indifference. Again, defendants rely on the timeline argument that the court has rejected, arguing that they could not have had bad intentions to issue their reports and RVR before plaintiff even spoke to Internal Affairs. The argument fails for the same reasons articulated above; namely, plaintiff alleges that he engaged in protected speech prior to the issuance of the reports and RVR.

Lastly, defendants argue that plaintiff's damages claims against them in their official capacities is barred by the 11th Amendment. Suits for damages against state officials sued in their official capacities are equivalent to suits against the state and are therefore barred by the 11th Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the court must grant defendants summary adjudication of plaintiff's claims against them in their official capacities.

**V.    Order and Recommendation**

In accordance with the above, it is hereby RECOMMENDED that defendants' September 29, 2022 motion for summary judgment (ECF No. 24) be GRANTED as to plaintiff's claims against them in their official capacities and otherwise DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 18, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE